FILED
2010 Oct-13  PM 02:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BONNIE LANEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:09-cv-0983-PWG |
| | ) | |
| WAL-MART STORES EAST, LP, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

This is a slip and fall case in which the plaintiff, Bonnie Laney, brings claims alleging negligence and wantonness under Alabama state law against defendant Wal-Mart Stores East, LP ("Wal-Mart").  Wal-Mart removed the action from Alabama state court, with jurisdiction being founded upon the diversity statute, 28 U.S.C. § 1332.  The parties have consented to the exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c), and Rule 73, Fed. R. Civ. P.  (Doc.[1] 11).  The action is now before the court on Wal-Mart's motion for summary judgment. (Doc. 9).  The parties have filed briefs and evidence in support of their respective positions on Wal-Mart's motion (Docs. 9, 14, 15), which is now ripe for decision.  For the reasons that follow, Wal-Mart's motion for summary judgment is due to be granted.

## I.    SUMMARY JUDGMENT STANDARDS

Although this is a diversity case in which the court applies Alabama substantive law, *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), summary judgment procedure is a matter of federal law

---

[1]    References herein to "Doc. __" are to the docket numbers assigned by the Clerk of the Court to the pleadings filed in this matter.

governed by Rule 56 of the Federal Rules of Civil Procedure.  *See Hammer v. Slater*, 20 F.3d 1137, 1140-41 (11th Cir. 1994); *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Syst., Inc.*, 669 F.2d 1026, 1036 n.10 (11th Cir. 1982).  Rule 56(c)(2), Fed. R. Civ. P., provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party moving for summary judgment

> bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  Once the moving party has met its burden, Rule 56(e), Fed. R. Civ. P., "requires the nonmoving party to go beyond the pleadings and by affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  Accordingly, in its review of the evidence, a court must credit the evidence of the non-movant and draw all justifiable inferences in the non-movant's favor.  *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000).

2

## II.    BACKGROUND[2]

On May 27, 2008, at approximately 5:30 p.m., Laney, a 60-year old female, went to a Wal-Mart "Super Center" store in Leeds, Alabama.  The evidence establishes that it was raining when Laney entered the store as it had been throughout the day.  As she entered through the garden center, Laney folded her umbrella and walked into the main store building towards the pharmacy department.  She was wearing rubber-soled "flip flop" sandals.  Ms. Laney acknowledges that she did not experience difficulty walking through the store.  Laney waited in line at the pharmacy for about ten minutes and picked up a prescription without incident.  She then decided to shop for a few food items.  She walked down an aisle toward the grocery department. Halfway down the aisle, Laney's feet slipped out from under her.  Her fall resulted in injuries.

After falling, Laney lost consciousness for some unknown period of time.  She awoke lying on the floor of the aisle.  A female Wal-Mart employee Crystal Gipson, approached her.  Gipson asked Laney if she needed help.  Laney replied that she did.  At that point, Laney alleges, Gipson looked up towards the ceiling and said, "The roof may be leaking."  (Pl. Dep. at 133).[3]  Gipson summoned several other employees to the area, one of whom, assistant store manager Rebecca Hogan, who had supervisory responsibility over the maintenance department.  Laney testified that while sill laying on her back, she looked over her right shoulder and saw a "good bit" of clear liquid on the floor, about the light yellow color of Mountain Dew, a popular brand of carbonated beverage.  Laney estimates that there was about 20 ounces of the liquid on the white colored floor tiles, spread

_____

[2]    The facts set out below are gleaned from the parties' submissions and are viewed in a light most favorable to the plaintiff. They are the "'facts' for summary judgment purposes only.  They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F. 3d 1386, 1400 (11th Cir. 1994)."  *Underwood v. Life Insurance Co. of Georgia*, 14 F. Supp 2d 1266, 1267 n.1 (N.D. Ala 1998).

[3]    Gipson denies having either looked up at the ceiling or making any such statement.

3

over an area about two and one-half standard size, 8 ½ x 11-inch, sheets of paper long by about one sheet wide.  Laney had not seen the liquid on the floor before she fell.  She states there was nothing to indicate that it was known there was liquid on the floor from a spill or a roof leak.  Laney also did not feel or see anything dripping on her while she was on the floor.

At the time of her deposition in mid-May 2010, Gipson had worked at the Leeds store for two and one-half years.  At the time of Laney's fall, Gipson had been working at the store for approximately six months.  Before being moved to the deli department four months before her deposition, Gipson had worked at the store as a maintenance associate.  In that capacity, her duties included walking the sales floor and checking the aisles for spills, debris, and foreign substances.  Gipson denies being aware of any occasion, either before or after the incident, that the roof had leaked at the location above where she found Laney.  Gipson further testifies that she had been in the location of Ms. Laney's accident on her rounds approximately twenty times that day.  Gipson testified that less than ten minutes before finding Laney, the floor where Laney was lying was clean and free of any foreign substance.  Gipson and Hogan testified that they did see some yellow liquid on the aisle floor when Laney was assisted up after her fall, although they claim that it was smaller in volume than Laney relates. Gipson, Hogan, and Laney all acknowledge that they do not actually know what the yellow liquid was, nor how or when it came to be on the floor.[4]  Gipson further testified that, for the next several hours until the end of her shift that day, she continued to observe the location where Laney fell and did not see any liquid in the area.

---

[4]	In her deposition, Gipson claimed that the yellow liquid on the floor smelled like urine, and she further asserted that when she found Laney on the floor, Laney's pants were soaked in such a manner that it appeared she had urinated on herself.  Laney denies that she did so, however.

Laney concedes that she has no evidence tending to show that any Wal-Mart employee knew about the liquid on the floor prior to the time that she fell.  Gipson and Hogan each testified that they are aware that the roof of the Leeds store would leak from time to time when it rained.  They each deny, however, that a leak existed above the particular area of the store where Laney fell.  While Hogan recalls that it was raining on the day that Laney fell, Hogan denies recalling rainwater leaking onto the floor anywhere in the store that day.  Hogan further testified that store maintenance would create a list of locations where the store roof was observed to have been leaking and give the list to the store manager.  He would then contact "facility maintenance" personnel to come fix it, and they would come within a day or two to repair the leaks.

Laney also testified that, the day before her deposition, she talked with her cousin's husband, Bill Bennett, who works as a door greeter at the Leeds store.  Laney relates that she asked Bennett at that time if the store leaked, and he said "yes."  However, Laney admits that she did not see Bennett on the day of her accident and that they never discussed where she fell in the store nor where any alleged leaks in the roof might have been located.  Laney also claims that her daughter, who worked at the Leeds store for a period of time, told her that the store had leaks.  Laney admitted, though, that her daughter was not employed at the store at the time of her fall, was not with her at the time of the fall, and that she did not identify where the alleged leaks were located within the store.[5]

---

[5]         Laney's testimony relating what she was allegedly told by her daughter and by Bennett would be potentially subject to exclusion at trial as hearsay.  Thus, that testimony, upon objection, could potentially be excluded from the court's consideration at the summary judgment stage.  *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999).  Nonetheless, Laney's testimony regarding the statements was first referenced by Wal-Mart in support of its motion, and Laney has not only made no objection, she has affirmatively relied on that testimony in her efforts to defeat summary judgment.  Accordingly, the court will at this time consider Laney's testimony about the statements made to her, for whatever it might be worth.  *See Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987); *Nasser v. City of Homewood*, 671 F.2d 432, 435 n.3 (11th Cir. 1982); *Munoz v.*

5

## III.    DISCUSSION

Laney asserts that Wal-Mart is liable under Alabama premises liability law pursuant to negligence and wantonness theories.  Wal-Mart asserts that it is entitled to summary judgment on such claims.  In support, Wal-Mart makes two principal arguments.  First, Wal-Mart contends that the evidence establishes as a matter of law that it had no duty to warn Laney about the liquid, if any, in the aisle because such condition would have been an open and obvious hazard.  Alternatively, Wal-Mart maintains that even assuming that the hazard was not open and obvious, it is still entitled to summary judgment because, Wal-Mart argues, the evidence demonstrates that it did not have actual or constructive knowledge of the liquid being on the floor before Laney fell.   The court concludes that Wal-Mart is entitled to prevail based on its second argument, premised upon its lack of knowledge or negligence otherwise.[6]

The Alabama Supreme Court has summarized the applicable law in "slip and fall" cases as follows:

> " '[A] storekeeper is under a duty to exercise reasonable care to provide and maintain reasonably safe premises for the use of his customers.  However, the storekeeper is not an insurer of the customer's safety, and is liable for injury only if he negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition.  The plaintiffs must prove that the injury was proximately caused by the negligence of [the storekeeper] or one of its servants or employees. Actual or constructive notice of the presence of the substance must be proven before [the storekeeper] can be held responsible for the injury.  Furthermore, the plaintiffs must prove (1) that the substance slipped upon had been on the floor a sufficient length of time to impute constructive notice to [the storekeeper]; or (2) that [the storekeeper] had actual notice that the substance was on the floor; or (3) that [the storekeeper] was delinquent in not discovering and removing the substance.'

*International Alliance of Theatrical Stage Employees, Etc.*, 563 F.2d 205, 214 (5th Cir. 1977).

[6]       Because the motion is resolved on the issue of Wal-Mart's knowledge of the condition, it is unnecessary to consider Wal-Mart's argument that the hazard was "open and obvious."

*Billings v. K-Mart Corp.*, 654 So. 2d 530, 532 (Ala. 1995) (quoting *East v. Wal-Mart Stores, Inc.*, 577 So. 2d 459, 460-61 (Ala. 1991) (quoting *Maddox v. K-Mart Corp.*, 565 So. 2d 14, 16 (Ala. 1990)). "However, an exception exists when the hazard was created by the defendant. In such a situation, notice of the hazardous condition is imputed to the defendant." *Id.* (citing *Dunklin v. Winn-Dixie of Montgomery, Inc.*, 595 So. 2d 463, 465 (Ala. 1992)).

Wal-Mart has satisfied its initial burden to point to evidence in the record indicating that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. Laney concedes she does not know what the liquid on the floor was, nor how or when it got there. She further admits that she "can provide no direct evidence that an employee of Wal-Mart knew about the liquid that [she] slipped on before [she] fell." (Pl. Brief, Doc. 14, at 8-9). Gipson's testimony that she was in the exact location where Laney fell less than ten minutes prior and that the area was clean and free of any liquid or foreign substance is a sufficient prima facie showing that Wal-Mart was not delinquent in discovering and failing to remove the liquid. *See Ex parte Wal-Mart Stores, Inc.*, 806 So. 2d 1247, 1249-50 (Ala. 2001) (testimony of Wal-Mart associate that she was in same area only five to seven minutes before the plaintiff fell on shampoo spilled in cosmetics aisle was sufficient to show store was not delinquent in failing to discover condition); *Hose v. Winn-Dixie Montgomery, Inc.*, 658 So. 2d 403, 405 (Ala. 1995) (same, based on testimony of produce clerk who testified he walked down the aisle five to ten minutes before the accident); *Richardson v. Kroger Co.*, 521 So. 2d 934, 935 (Ala. 1988) (same, based on testimony of produce employee who stated she had made a check of floor for debris, food items or spills 15 to 20 minutes before the fall and had been in the area 5 to 10 minutes before the accident and did not notice anything). Gipson, whose job duties as a maintenance associate included dealing with the effects of roof leaks on the sales

7

floor, unequivocally denied that she was aware of the existence of a leak at the location of Laney's fall at any time that she worked at the store.  Hogan's testimony is to the same effect.  Gipson further stated that she had observed the fall area at various times during her shift on the day in question, both before and after Laney's fall, and saw no dripping liquid or other evidence of a roof leak.  Laney likewise states that she never saw any liquid dripping onto the floor in the area where she fell.  Hogan testified that it was the regular practice or procedure of the store's maintenance department to advise the store manager of locations where the roof had been observed to leak, and he would then have personnel come out to make repairs within a few days.

In response to such evidence, Laney seeks to avoid summary judgment by contending that there is sufficient circumstantial evidence to permit a reasonable inference that the liquid on the floor of the aisle where she fell resulted from a leak in the roof and that Wal-Mart employees had prior knowledge of it.  In support of this argument, she relies on three types of evidence.  First, Laney notes that the liquid was clear and light yellow, similar to the color of Mountain Dew, which is consistent, she suggests, with the color of rainwater that leaked through the roof.  While Wal-Mart responds that rainwater is colorless, not yellow, it might be assumed that rainwater could possibly become discolored after it lands on an outdoor roof, enters through a leak, and filters through to the floor.  Even so, the color of the liquid alone proves essentially nothing about its composition, source, or how long it had been on the floor.  Without more, drawing a particular inference concerning the make up of the liquid based on color would be only speculation and conjecture.  *Cf. Hose,* 658 So. 2d at 405 (plaintiff's testimony regarding "murky liquid substance" on store floor did not support an inference that it had been there for a sufficient period of time so as to charge the store with constructive knowledge of its presence).

8

Second, Laney relies upon testimony, which includes that of Wal-Mart's own employees, Gipson and Laney, that the roof of the Leeds store leaked from time to time when it rained, causing water to drip onto the areas of the store floor.  It might be assumed that if there were evidence that Wal-Mart knew or should have known that the roof had previously leaked  at the particular spot above where Laney fell, it would be appropriate, given that it had been raining for a significant period during the day in question, to find that Wal-Mart should have known that rainwater might accumulate there and acted negligently in failing to prevent or remedy the problem.  *See, e.g., Drennan v. Kroger Co.*, 672 So. 2d 1168, 1170-71 (Miss. 1996).  However, the vague testimony here supporting only the inference that some leaks in the roof allowed rainwater to enter with unspecified frequency and intensity at unspecified locations within the store.  The inference does not create a jury question on whether the liquid at the particular location where Laney fell resulted from a leak in the roof or that Wal-Mart had prior knowledge of it.  *See Bowling v. Wal-Mart Stores, Inc.*, 233 Fed. Appx. 460, 468-69 (6th Cir. 2007) (unpublished); *Martin v. Wal-Mart Stores*, 159 Fed. Appx. 626, 629-30 (6th Cir. 2005) (unpublished); *see also City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 536-37 (Tex. 1996) (holding that the plaintiff was required to establish the defendant's actual or constructive knowledge of water on the floor, not just that the defendant knew of roof leaks); *but see Ruiz v. Toys R Us, Inc.*, 636 A.2d 117, 121-22 (N.J. Super. A.D. 1994) (holding that the plaintiff was not required to prove  actual or constructive notice of "the *specific* water spot" where she fell where defendant proprietor was aware that the roof leaked water onto the store's floor when it rained).

Third and finally, Laney relies most heavily upon her own testimony that when Gipson first found her lying on the floor of the aisle, Gipson looked toward the ceiling and said, "The roof may be leaking."  Wal-Mart contends that Gipson's alleged statement, even if combined with the yellow

color of the liquid and the fact that the store had experienced some roof leaks previously, is insufficient from which a jury might reasonably infer that a roof leak actually was the source of the liquid upon which Laney claims to have slipped or that Wal-Mart had prior knowledge of it.  As a matter of law Wal-Mart is correct.  Laney admits she never saw liquid dripping from the ceiling in the area where she fell, despite the fact she was lying on the floor for several minutes, it rained much of that day and had continued to do so when she entered the store.  Gipson and Hogan testified unambiguously that they never saw any dripping liquid or any other evidence of a roof leak at that location either on the day in question or any other day.  Gipson further explained that she frequently observed the area, both before and after the accident, and that her maintenance position duties required her to make rounds of the store, look for and react to liquid from leaks or spills on the floor. Gipson's alleged statement to Laney that the roof "may be" leaking tends to acknowledge little more than a mere *possibility* that such was the source of the liquid in the aisle, rather than reflecting actual knowledge or an affirmative belief to that effect.  *Cf. Rubin v. U.S. News & World Report*, 271 F.3d 1305, 1308 (11th Cir. 2001) (plaintiff's statement he "may have handled" smuggled gold did not reasonably imply that he had knowingly handled smuggled gold but instead indicated that he did not actually know whether he had done so or not). This is particularly true in light of Gipson's testimony that she was aware that the roof leaked from time to time above other areas of the store when it rained.  Ultimately, in light of the undisputed evidence presented by Wal-Mart which belies the notion that the liquid in the aisle resulted from a roof leak or that Wal-Mart had actual or constructive prior knowledge of any such leak, the plaintiff's evidence fails reasonably to support either contrary inference.

Finally, Laney argues that evidence of a leaking roof would allow her to avail herself of the principle that a plaintiff need not show the defendant's prior knowledge of a hazard where the defendant or it its employees "created" the condition.  However, as discussed above, there is insufficient evidence to support a finding that the liquid in the aisle actually was from a roof leak. But if there were sufficient evidence of that proposition, the Alabama courts have stated that the "creation" exception to the defendant's knowledge requirement in premises liability cases "applies to the *active* negligence of a defendant or its employees that causes a dangerous condition to come into existence in what would otherwise be a safe environment."  *Edwards v. Intergraph Servs. Co.*, 4 So. 3d 495, 504 (Ala. Civ. App. 2008) (emphasis original).  Thus, even assuming *arguendo* that Wal-Mart's roof at times leaked above other areas of the store floor, such does not alone support that Wal-Mart negligently "created" the hazard at issue here so as to dispense with the notice requirement.  *See Ruiz*, 636 A.2d at 121 (holding that the plaintiff was required to show knowledge of the hazard "because it cannot be said that either of the defendants, or their agents or employees, caused the roof to leak"); *Rodriguez*, 931 S.W.2d at 536-37 (holding that the plaintiff was required to establish the defendant's actual or constructive knowledge of water on the floor, not just that the defendant knew of roof leaks); *also compare Edwards*, 4 So. 3d at 504-05 (defendant's installation of a flooring material that had produced no complaints or injuries for 14 years did not constitute "affirmative creation" of a defective condition) *with Wal-Mart Stores, Inc. v. Rolin*, 813 So. 2d 861, 865 (Ala. 2001) (defendant deemed to have created the condition where customer tripped over a barbecue grill that was protruding from a box in a display created by store employees); *Wal-Mart Stores, Inc. v. McClinton*, 831 So. 2d 232, 234 (Ala. 1993) (same, where gun cabinet display was protruding into store aisle); *Denmark v. Mercantile Stores, Inc.*, 844 So. 2d 1189 (Ala. 2002) (same,

premises owner's employees had left a large roll of plastic shopping bags in a place where customers were likely to trip on it).  The plaintiff's argument that she might prevail based on a theory that Wal-Mart negligently "created" the hazard that caused her injury is due to be rejected.

**III.    CONCLUSION**

Based on the foregoing, there is no genuine issue of material fact and Wal-Mart is entitled to judgment as a matter of law on all claims.  Accordingly, Wal-Mart's motion for summary judgment (Doc. 9) is due to GRANTED.  The court will enter an appropriate final order.

As to the foregoing it is SO ORDERED this the 13th day of October, 2010.

_____

PAUL W. GREENE
CHIEF MAGISTRATE JUDGE